**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **GREAT VISTAS, LLC, BLUEBEARD'S CASTLE HILLTOP VILLAS, BLUEBEARD'S CASTLE VILLAS III, and BLUEBEARD'S CASTLE PIRATE'S PENSION,** | |
| **Plaintiffs,** | **Case No. 3:25-cv-00041** |
| **v.** | |
| **CAPITAL VACATIONS RESORT MANAGEMENT II, LLC; CAPITAL VACATIONS RESORT MANAGEMENT, LLC; CAPITAL VACATIONS RESORT MANAGEMENT III, LLC; CRG DEVELOPMENT, LLC; CAPITAL VACATIONS, LLC; SPM RESORTS VIRGIN ISLANDS, LLC; WYNDHAM VACATION RESORTS, INC.; RICHARD S. MULLER, trustee of the Richard S. Muller Trust UDT 1/16/2015; WILLIAM C. YOUNG, trustee of the Young Family Revocable Trust dated 12/8/2021; HENRY CAIRO; DAVID R. COPE; and KENNETH McKELVEY,** | |
| **Defendants.** | |

**APPEARANCES:**

**MARIA TANKENSON HODGE, ESQ.**
**MARK D. HODGE, ESQ.**
Hodge & Hodge
St. Thomas, VI

*For Plaintiffs Great Vistas, LLC; Bluebeard's Castle Hilltop Villas; Bluebeards Castle Villas III; Bluebeard's Castle Pirates' Pension; and*
*For Counter Defendants Bluebeard's Castle Hilltop Villas; Bluebeards Castle Villas III; Bluebeard's Castle Pirates' Pension.*

**CHAD C. MESSIER, ESQ.**
Dudley Newman Feurezeig LLP
St. Thomas, VI

*For Defendants Capital Vacations Resort Management, LLC; Capital Vacations Resort Management III, LLC; CRG Development, LLC; Capital Vacations, LLC; SPM Resorts Virgin Islands, LLC; Wyndham Vacation Resorts, Inc.; Richard S. Muller, Trustee of the Richard S. Muller Trust UDT 1/16/2015; William C. Young Trustee of the Young Family Revocable Trust Dated 12/8/2021; Henry Cairo; David R. Cope; Kenneth McKelvey; and For Counter Claimant William C. Young Trustee of the Young Family Revocable Trust Dated 12/8/2021.*

**CRAIG M. O'SHEA, ESQ.**
Dudley Newman Feurezeig LLP
St. Thomas, VI

*For Defendants William C. Young Trustee of the Young Family Revocable Trust Dated 12/8/2021; and*
*For Counter Claimant William C. Young Trustee of the Young Family Revocable Trust Dated 12/8/2021.*

**MEMORANDUM OPINION**

**Robert A. Molloy, *Chief Judge***

Before the Court is Plaintiffs' Great Vistas, LLC, Bluebeard's Castle Hilltop Villas, Bluebeard's Castle Villas III and Bluebeard's Castle Pirates Pension, ("Plaintiffs") motion [ECF 3] to remand this matter to the Superior Court pursuant to Title 28 U.S.C. §§ 1334(c) and 1452. [ECF 3] at 1. Defendant William C. Young, Trustee of the Young Family Revocable Trust Dated 12/8/2021 ("Young") opposes [ECF 12] this motion, with Plaintiffs having filed a reply [ECF 16]. For the reasons that follow, the Court will refer this matter to the Bankruptcy Division for determination on remand and abstention.

## I. BACKGROUND[1]

In 2008, Equivest St. Thomas, Inc. ("ESTI") commenced Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court. [ECF 1-5] at 5. In connection with those proceedings, the Bankruptcy Court approved a settlement agreement [ECF 1-1] and incorporated it into ESTI's confirmed plan of reorganization. *Id*. at 5-6. The settlement agreement included provisions restricting ESTI's ability to vote certain timeshare interval

[1] The Court writes for the parties and thus provides only a brief overview of the factual and procedural background, taking the facts from the Plaintiffs' complaint and attached exhibits.

interests for purposes of electing directors to the boards of the Bluebeards associations, subject to specified exceptions. *Id*. at 5; [ECF 1-1] at 9 ¶ (ix). Additionally in the confirmed plan is a provision that stated:

> Notwithstanding Confirmation of the Plan, this Court retains jurisdiction over the Debtor's Bankruptcy Case pursuant to and for the purposes set forth in (a) Sections 105(a) and 1127 of the Bankruptcy Code and (b) Article XII of the Plan, to enforce the terms of this Order, and for such other purposes as may be necessary or useful to aid the implementation and consummation of the Plan.

[ECF 1-4] at 7; [ECF 12] at 8. Following confirmation of the plan, ESTI later changed its name to Wyndham St. Thomas, Inc. ("Wyndham"). [ECF 1-5] at 6. On September 16, 2020, Capital Vacations Resort Management II, LLC ("Capital II") entered into a written management agreement with the associations. *Id*. at 5-6. Under the management agreement, Capital II assumed responsibility for operational, financial, and administrative functions, including the handling of association funds, maintenance of bank accounts, assessment collection, and financial reporting. *Id.; Id*. at 18–19.

In December 2023, Wyndham executed deeds conveying its remaining timeshare interval interests within the Associations to CRG Development, LLC ("CRG"). *Id*. at 7–8. Those deeds were recorded in the Office of the Recorder of Deeds for St. Thomas and St. John on January 10, 2024. *Id*. Following the conveyances, CRG became the record owner of the former Wyndham interval interests. *Id*. at 8–9. After CRG acquired the interval interests, those interests were voted at association meetings. *Id*. at 11–12. Disputes subsequently arose concerning whether the voting of those interests was consistent with the restrictions set forth in the 2008 settlement agreement and the associations' governing documents. *Id*. Additional disputes arose during Capital II's management regarding financial reporting, assessment obligations, and the maintenance of association bank accounts. *Id*. at 18–20.

On June 26, 2025, the Plaintiffs issued a written notice of default to Capital II identifying alleged deficiencies under the management agreement. *Id*. at 19. The notice demanded corrective action and an accounting of association funds. *Id*. at 19–20. After the identified defaults were not resolved, the management agreement was terminated in August 2025 as to certain associations. *Id*. at 21. Following termination, disputes arose regarding access to bank accounts, transfer of association funds, and production of financial records. *Id*. at 21–23. On August 11, 2025, deeds were issued and recorded, conveying units in the Pirates Pension, Hilltop, and Villas III Associations. *Id*. at 24–25. Said conveyances occurred before scheduled association meetings, which resulted in further disagreements regarding board eligibility and voting rights. *Id*. at 24–25.

The Plaintiffs filed this action on October 14, 2025 in the Superior Court of the Virgin Islands asserting claims of conversion, breach of fiduciary duty, breach of contract, fraudulent representations, and violations of the Virgin Islands Corrupt Organizations Act ("CICO"). [ECF 1-6] at 3-5. The complaint additionally seeks declaratory and injunctive relief as well as punitive damages. *Id*. at 1, 6-7.

On October 16, 2025, Young filed a notice of removal [ECF 1] with this Court asserting its propriety because resolution of Plaintiffs' claims purportedly requires interpretation and enforcement of the 2008 bankruptcy settlement agreement and related bankruptcy court orders. *Id*. at 2–4. Young also notes that he was not a party to ESTI's bankruptcy case, was not a signatory to the settlement agreement, and did not participate in the bankruptcy proceedings. *Id*. at 3. Plaintiff's motion to remand counters that their "claims are founded directly and explicitly on local law, including cited Virgin Islands criminal code sections, tort law, breach of contract, and the Virgin Islands CICO Act." [ECF 4] at 6 ¶16. In sum, the question before this Court is whether the claims asserted in this action arise under federal bankruptcy

law or instead concern post-bankruptcy conduct governed by territorial law and the associations' governing documents. *Id.*; [ECF 1] at 4.

## II. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction . . . [and] it is to be presumed that a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception, for . . . [w]ithout jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (internal quotations and citations omitted); *see also GBForefront, L.P. v. Forefront Mgmt. Grp.*, LLC, 888 F.3d 29, 34 (3d Cir. 2018) ("It is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case . . . ."). Federal courts thus have an absolute duty to verify subject matter jurisdiction if it is in doubt, and must dismiss an action where jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Ruhrgas AG*, 526 U.S. at 577; *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003); see also 28 U.S.C. § 1447(c) (for cases removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

Federal district courts have jurisdiction only in matters involving a federal question, diversity of citizenship, or other limited statutorily provided areas. See 28 U.S.C. § 1331 et seq. As such, "[a] defendant may only remove a civil action to federal court if the plaintiff could have originally filed the action in federal court." *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 180 (3d Cir. 2023); 28 U.S.C. § 1441(a). The defendant's right to remove must exist at the time of removal, *Houston & T.C. Ry. Co. v. Shirley*, 111 U.S. 358, 361 (1884) ("the requisite citizenship [must] exist[] both when the suit was begun and when the petition for removal

was filed"), and "[d]efendants, as the parties seeking to remove the case to federal court, bear the burden of establishing federal jurisdiction." *Rowland*, 73 F.4th at 180; see *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (a party "meets this burden by proving diversity of citizenship by a preponderance of the evidence"); see also *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) ("The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation."). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted); *see Glenmede Tr. Co. v. Dow Chem. Co.*, 384 F. Supp. 423, 433–34 (E.D. Pa. 1974) ("It is well settled that district courts should remand close or doubtful cases for two reasons. First, remand will avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to decide the case.").

## III. DISCUSSION

As one basis for removal, Young asserts that this court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 since the Plaintiffs' claims "rely solely and exclusively on federal law"— *i.e*., the interpretation the Bankruptcy Court's March 11, 2008 Order. [ECF 1] at 4. 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This action does not arise under the Constitution, laws or treaties of the United States. The Plaintiffs' claims do not involve a federal question, nor do they require interpretation of any specific federal statute *outside* of the Bankruptcy Code. Accordingly, this court does not have subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

The only arguable foundation for subject-matter jurisdiction in this case is 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[2] More specifically, under Section 157(a), "[e]ach district court may provide that ... any or all proceedings arising under title 11 [i.e., the Bankruptcy Code] or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for this district." 28 U.S.C. § 157(a) (emphasis added); *see In re Combustion Eng'g, Inc.,* 391 F.3d 190, 225 (3d Cir. 2004) (quoting *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995)) ("Section 157(a) of the Bankruptcy Code permits district courts to refer most matters to a bankruptcy court," thereby allowing the bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate.").

Pursuant to this authority, the Local Rules of U.S. Bankruptcy Court provide that "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are automatically referred to the Bankruptcy Judge … appointed to sit in the U.S. Virgin Islands." LRBP 5011.1(A). Therefore, under Section 157 and the local bankruptcy rules, the threshold issue raised by Young's present motion is whether the bankruptcy court has jurisdiction within the meaning of the aforementioned statutes. By their clear terms, the bankruptcy court's jurisdiction arises in three circumstances involving "any or all proceedings" (1) "arising under title 11," (2) "arising in" a case brought under Title 11, or (3) "related to" a case under Title 11." 28 U.S.C. §§ 157(a) and (b)(1).

---

[2] Young's suggestion that this court exercise "supplemental jurisdiction" under 28 U.S.C. § 1367 is equally unavailing and cannot be granted. [ECF 1] at 4. "Bankruptcy courts, unlike district courts, are limited to the jurisdictional grant provided in 28 U.S.C. § 1334, which grant excludes supplemental jurisdiction." *In re Pollilo*, 2010 WL 235125, at *14 (Bankr. E.D. Pa. Jan. 15, 2010) *See, e.g., Matter of Walker,* 51 F.3d 562, 572–73 (5th Cir.1995); *In re Enron Corp.,* 353 B.R. 51, 62 (Bankr.S.D.N.Y.2006); *In re Found. for New Era Philanthropy,* 201 B.R. 382, 397–98 (Bankr.E.D.Pa.1996).

Young emphasizes that "Counts I and II of Plaintiffs' Verified Complaint present core bankruptcy proceedings 'arising under' and 'arising in' title 11, which give rise to bankruptcy jurisdiction under 28 U.S.C. § 1334." [ECF 12] at 18. But because "non-core" or "related to" jurisdiction cases "sweeps with the broadest brush," *Safe Founds.,* 2012 WL 6651540, at *2 (W.D. Pa. Dec. 20, 2012), this Court need only decide whether the present case is "related to" the bankruptcy proceeding. *See In re Resorts Int'l, Inc.,* 372 F.3d 154, 163 (3d Cir.2004) (quoting *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266 (3d Cir. 1991)) ("[W]e need not resolve whether this is a 'core' proceeding for subject matter jurisdictional purposes because '[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction' "); *In re Reed,* 94 B.R. 48, 51 (E. D. Pa. 1988) ("Whether a proceeding is core or non-core affects the power of the bankruptcy judge to issue a final order or judgment ... but not the ability to hear the proceeding."). Hence, for this court to have subject matter jurisdiction over the action at bar, the claims presented in the State action must be "related to" the previous ESTI bankruptcy proceeding. There we go next.

The United States Court of Appeals for the Third Circuit "addresse[d] the scope of 'related to' jurisdiction of the bankruptcy court for postconfirmation claims brought on behalf of a litigation trust against an accounting firm" for malpractice. *Resorts,* 372 F.3d 154 at 156. The debtor was not a party to the action; since the alleged malpractice occurred after the bankruptcy court had confirmed the debtor's reorganization plan, "the debtor's estate no longer exist[ed]." *Id.* at 157. The plaintiff argued that the malpractice claim was "related to" the bankruptcy proceeding, since "any recovery obtained in this action would necessarily become Trust assets," which might then be distributed "to the beneficiaries of the Litigation Trust, who were the former creditors of the debtor's estate." *Id.* Defendant, meanwhile, claimed that the Litigation Trust, "a legally distinct entity, [was] not a continuation of the

bankruptcy estate for jurisdictional purposes." *Id.* Furthermore, defendant asserted, "the debtor [was] only tangentially affected by [the] malpractice action after it assigned away its interests in the litigation claims, and the Litigation Trust beneficiaries traded away their creditor status to attain rights to the Trust's assets." *Id.*

The bankruptcy court in *Resorts* "characterized the matter as a post-confirmation dispute between two non-debtors involving state law claims that did not affect the 'administration of the estate, property of the estate, or liquidation of assets of the estate.'" *Id.* at 159 (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.),* Adv. No. 97–2283, slip. op. at 21 (Bankr.D. N.J. Jan. 4, 2002)). It therefore "rejected 'related to' jurisdiction because the claims could not have had any 'conceivable effect on the administration of the estate,' and because the dispute would not significantly affect the consummation of the Reorganization Plan." *Id.* (citing *In re Resorts Int'l,* Adv. No. 97–2283, slip. op. at 29–32).

The Third Circuit declared that "the seminal case for determining the boundaries of 'related to' jurisdiction" was its 1984 decision in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). *In re Resorts,* 372 F.3d at 164. In *Pacor,* the court stated that

> [t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is *whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor,* 743 F.2d at 994 (emphasis added) (citing *In re Hall,* 30 B.R. 799, 802 (M.D.Tenn.1983); *In re General Oil Distributors, Inc.,* 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y.1982): *In re U.S. Air Duct Corp.,* 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981); 1 Collier on Bankruptcy ¶ 3.01 at 3–49). The Third Circuit later explained that "[a] key word in this test is 'conceivable.' Certainty, or

even likelihood, is not a requirement." *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991) (citing *In re Wolverine Radio Co.,* 930 F.2d 1132, 1143 (6th Cir.1991). *See also Lichtenfels v. ElectroMotive Diesel, Inc.,* 2010 WL 653859, at *3 (W.D. Pa. Feb. 22, 2010) (quoting *Halper v. Halper,* 64 F.3d 830, 837 (3d Cir. 1999)) ("The term, 'conceivable,' in the *Pacor* test is a key component to making a determination about jurisdiction.... 'Conceivable' does not simply mean that a proceeding will have a certain or likely impact upon a bankruptcy estate, but that 'it is possible that a proceeding may impact the debtor's rights, liabilities, options, or freedom of action, or the handling and administration of the bankrupt estate.'").

"On the other hand," *Pacor* cautioned, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b)12," because "[j]udicial economy itself does not justify federal jurisdiction." *Id.* (citing *Aldinger v. Howard,* 427 U.S. 1, 15 (1976)). Citing *Pacor* with approval, the United States Supreme Court, stated that a "proceeding need not necessarily be against the debtor or against the debtor's property" for "related to" jurisdiction to apply; however, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6 (1995).

"After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. This is so," the *Resorts* court stated, "because, under traditional *Pacor* analysis, bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates 'the logical possibility that the estate will be affected.'" *Resorts*, 372 F.3d at 165 (internal citations omitted). While, "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred," the Third Circuit reiterated that

"courts do not usually apply *Pacor's* 'effect on the bankruptcy estate' test so literally as to entirely bar post-confirmation bankruptcy jurisdiction." *Id.* Instead, "the essential inquiry" with regard to post-confirmation causes of action "appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166–67 (emphasis added). "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. Under those circumstances, bankruptcy court jurisdiction would not raise the specter of 'unending jurisdiction' over continuing trusts." *Id.* at 167.

Young emphasizes the retention-of-jurisdiction provision in the settlement agreement as basis for bankruptcy jurisdiction, [ECF 12] at 8, but retention-of-jurisdiction provisions are effective only when the bankruptcy court has actual statutory jurisdiction. "[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket"; it must exist under 28 U.S.C. §§ 1334 and 157. *In re Resorts*, 372 F.3d 154 at 161. Subject matter jurisdiction "cannot be conferred by consent" of the parties. *Coffin v. Malvern Fed. Sav. Bank,* 90 F.3d 851, 854 (3d Cir.1996). Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. *In re Cont'l Airlines, Inc.,* 236 B.R. 318, 323 (Bankr.D.Del.1999), *aff'd,* 2000 WL 1425751 (D.Del. September 12, 2000), *aff'd,* 279 F.3d 226 (3rd Cir.2002).

Similarly, if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. *Id.; accord United States Trustee v. Gryphon at the Stone Mansion,* 216 B.R. 764, 769 (W.D.Pa.1997) ("A retention of jurisdiction provision within a confirmed plan does not grant a bankruptcy court jurisdiction."), *aff'd,* 166 F.3d 552 (3d Cir.1999). Bankruptcy courts can only act in

proceedings within their jurisdiction. *Donaldson v. Bernstein,* 104 F.3d 547, 552 (3d Cir.1997). "If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." *Resorts,* 372 F.3d 154 at 161. But if there is jurisdiction, we will give effect to retention of jurisdiction provisions.

In the instant case, the Plaintiffs' claims involve the reorganized debtor, Wyndham, formerly ESTI, among other defendants. The complaint is premised on a course of conduct that Plaintiffs trace to ESTI's alleged violation of the 2008 settlement agreement and to subsequent actions taken by entities that acquired ESTI's interests (in violation of said agreement). The Court now holds that the outcome of the Plaintiffs' claims "could conceivably have any effect on the estate being administrated in bankruptcy" because the interpretation and analysis of the settlement agreement may affect the execution or "administration of the bankruptcy plan." *See Pacor*, 743 F.2d at 994. Further, any potential damages or other remedies that could flow to them should they succeed would have some effect on the reorganized estate. *See Id.*; *see also Donaldson v. Bernstein*, 104 F.3d 547, 552–54 (3d Cir. 1997) (upholding post-confirmation bankruptcy court jurisdiction where the debtors failed to fund the reorganization plan and failed to pay unsecured creditors as required by the plan). Moreover, the factual issues underlying the Plaintiffs' claims substantially overlap, as the circumstances giving rise to the later claims for breach, conversion, and alleged CICO violations arise from the same core facts as the claims regarding the settlement agreement. "[T]he non-referral of the present case to the bankruptcy court would result in an inefficient use of judicial resources." *Hadeed v. Advanced Vascular Resources of Johnstown,* LLC, 2017 WL 6001860, at *4 (W.D. Pa. Dec. 1, 2017). The Court therefore concludes that it has "related-to" subject-matter jurisdiction over the action at bar.

The Court declines to rule on the issue of whether any part of the present case is a "core" or "non-core" proceeding to ESTI's bankruptcy case as "the determination whether a proceeding is core or noncore is made by the bankruptcy judge in the first instance." *In re Prosser*, 50 V.I. 389, 395 (D.V.I. 2008). The Court has already held that the bankruptcy court has subject matter jurisdiction over this case under 28 U.S.C. § 157(a). And Section 157(b)(3) provides that:

> "The *bankruptcy judge shall* determine ... whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C. § 157(b)(3) (emphasis added). Thus, as the Court has already determined that this action "related to" the previous bankruptcy, this case "shall" be referred to the bankruptcy court where the bankruptcy judge, under Section 157(b)(3), "shall" decide whether the proceedings are "core" or "non-core."[3]

Just as we decline to analyze each claim to determine whether it is core or non-core, this Court will not assess mandatory nor permissive abstention. Mandatory abstention only applies to non-core matters—"that is, proceedings related to a case under title 11, but not arising under title 11, or arising in a case under title 11." *In re Seven Fields Dev. Corp.,* 505 F.2d 237, 251 (3d Cir.2007) (internal citations omitted); *see also In re Exide Tech.,* 544 F.3d 196,

[3] *See e.g., Travellers Int'l AG v, Robinson,* 982 F.2d 96, 97-98 (3d Cir. 1992) (commenting approvingly on the district court's procedure of submitting "core"/"non-core" question to bankruptcy court for determination before the district court decided a motion to withdraw reference); *Safe Founds.,* 2012 WL 6651540, at *3 (referring the case to the bankruptcy court to determine whether the issue is "core" or "non-core" after holding that the bankruptcy court has subject matter jurisdiction); *In re Kara Homes, Inc. v. Zuhdi Karagjozi*, 2009 WL 2223035, at *1 (D.N.J. July 22, 2009) (stating that "the bankruptcy judge, not the district court, determines whether a proceeding is core or non-core"); *K & B Capital, LLC v. Ogden,* 2005 WL 1799735, at *1 (W.D. Ky. July 26, 2005) (referring the case to the bankruptcy court for a determination of whether the case at bar constitutes a "core" or "non-core" proceeding); *In re 1733 Ridge Road East, Inc.,* 125 B.R. 722, 724-25 (W.D.N.Y. 1991) (holding it was for the bankruptcy court, and not the district court, to determine whether state law claims related to bankruptcy proceeding were "core" or "non-core").

206 (3d Cir.2008) ("Whether claims are considered core or non-core proceedings dictates not only the bankruptcy court's role and powers but also the availability of mandatory abstention ..."); *Bayou Steel Corp. v. Boltex Mfg. Co., L.P.*, 2003 WL 21276338, at *1 (E.D. La. June 2, 2003) ("the determination under 28 U.S.C. § 157(b)(3) (*i.e.,* whether this proceeding is a "core" proceeding or is merely "related to" the bankruptcy case) is required in order to decide plaintiff's motion for abstention and/or remand. This determination is for the bankruptcy judge"). Further, pursuant to 28 U.S.C. 1334(c)(1), permissive abstention is within the sound discretion of the bankruptcy judge. *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002). Hence, the prudent decision is to allow the Bankruptcy Division to make the remand decision

## IV. CONCLUSION

This Court concludes that this case is sufficiently "related to" ESTI's previous bankruptcy proceeding, therein giving the bankruptcy court subject matter jurisdiction. However, the bankruptcy court's adjudicative authority on the issues of remand may be constrained depending on its determination of whether and which issues are "core" or "non-core." As such the Court will refer Plaintiffs' emergency motion [ECF 3] to remand to the Bankruptcy Division of this Court for determination.

An appropriate Order follows.

Dated: September 30, 2026

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**CHIEF JUDGE**